UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| **DAVID P. WORKMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:17-CV-00036 PLC |
| **THE CINCINNATI INSURANCE CO.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANUM AND ORDER

This matter is before the Court on Plaintiff David Workman's first motion to compel production of documents. (ECF No. 21). Defendant Cincinnati Insurance Company opposes the motion. (ECF No. 25). On November 29, 2017, the Court heard argument on the motion and received the subject documents for *in camera* review. Upon review of the documents, the motion to compel will be granted in part and denied in part.

### *I. Factual and Procedural Background*

On June 12, 2016, Plaintiff was driving east on a four-lane highway at the same time that Gary Gardner and an unidentified driver were racing each other in the westbound lanes at speeds in excess of 100 miles per hour. (ECF No. 7 at ¶¶ 7-9). Mr. Gardner, now deceased, lost control of his vehicle, crossed the median, and crashed into Plaintiff's vehicle, causing Plaintiff serious physical injury.[1] (Id.).

At the time of the accident, Plaintiff was insured under an insurance policy issued by Defendant. (Id. at ¶ 5). The policy provided that it would "pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of

---

[1] Plaintiff's daughter Samantha Workman, who was riding in Plaintiff's car at the time of the accident, also sustained injuries. (See ECF No. 26-5).

1

an uninsured motor vehicle." (Id. at ¶ 6).

Plaintiff retained attorney Branson Wood on June 28, 2016. (ECF No. 26). On August 8, 2016, Mr. Wood sent an email to Defendant's senior claims specialist, informing her of Plaintiff's intent "to proceed on an Uninsured Motor Vehicle claim along with the Underinsured Motor vehicle and other claims available to use." (ECF No. 26-1). On November 4, 2016, Defendant's outside counsel, Brian Hunt, sent Mr. Wood a letter stating: "To the extent that your correspondence [of August 8, 2016] can be construed as a demand for arbitration, please be advised that under the provisions of your clients' underinsured motorist coverage, this demand for arbitration is premature[.]" (ECF No. 26-1). Mr. Wood responded to the letter five days later advising Mr. Hunt that "[w]e will not be pursuing a UIM claim in this matter; however, we will be pursuing instead uninsured motorist claim." (ECF No. 26-3).

Mr. Wood sent Mr. Hunt a letter on January 5, 2017 demanding $100,000 in settlement of Plaintiff's claims. (ECF No. 26-5). Receiving no response from Defendant, Mr. Wood contacted Mr. Hunt again by letter dated February 7, 2017. (ECF No. 26-6) On April 19, 2017, Mr. Wood sent Mr. Hunt a "Supplement to Demand Packet of January 5, 2017," reiterating the settlement demand for $100,00 and warning that, because he had "neither received an acknowledgement of my letter of January 5, 2017, nor a response to the initial letter, . . . .[W]e anticipate filing suit in the near future." (ECF No. 26-10).

On May 9, 2017, Plaintiff filed a petition against Defendant in the Circuit Court of Marion County, Missouri alleging breach of contract and vexatious refusal to pay. (ECF No. 7). Defendant removed the case to federal court pursuant to 28 U.S.C. Sections 1332, 1441, and 1446. (ECF No. 1).

Plaintiff served upon Defendant a request for production of documents requesting, among

2

other things, the "claim file" and Defendant's "sales and promotional materials."[2] (ECF No. 21). In response to Plaintiff's request for the claim file, Defendant produced a "redacted claim file consisting of some 826 pages" and "a privilege log for documents withheld from the claims file asserting attorney/client privilege and work product[.]" (Id.). The produced documents did not include Defendant's reserve information. (ECF No. 22 at 4).

Plaintiff filed a motion to compel production of documents arguing that: (1) the privileges asserted by Defendant do not apply to documents created prior to the filing of the instant lawsuit;[3] and (2) Defendant's sales and promotional materials are relevant to the "standard of care, knowledge, and notice and may be a subject of expert testimony in bad faith cases." (ECF Nos. 21 & 22). Defendant opposed the motion to compel production on the grounds that: (1) the "redacted portions of the claim file were properly withheld from production for attorney-client privilege and under the work product doctrine"; and (2) Plaintiff's request for sales and promotional materials "is overly broad and the relevance of the request is not readily apparent on its face." (ECF No. 25).

On November 29, 2017, the Court held a hearing on the motion to compel. After hearing argument from the parties, the Court issued from the bench its ruling with respect to Plaintiff's motion to compel production of sales and promotional material. The Court granted the motion with the following limitations: Defendant shall produce sales and promotional materials from the years 2016 and 2017 that are specific to the Illinois insurance market and similar in nature to the materials in Plaintiff's Exhibit N (ECF No. 26-11).

---

[2] In his memorandum in support of the motion to compel, Plaintiff narrowed the request to "sales materials for automobile policies like the one in this case for a period of five years prior to the date of the injury in this case." (ECF No. 22 at 9).
[3] Plaintiff specified that the "areas of dispute are Items number 1 through 9, 15 through 37, and 51 through 81. The remaining items relate to current counsel after this case was filed and are not the subject of this Motion to Compel." (ECF No. 22 at 5).

3

In regard to Plaintiff's motion to compel production of the redacted and withheld portions of the claim file, the Court received for its *in camera* review unredacted copies of the documents listed in the privilege log as Item Nos. 1-9, 15-37, and 51-81. Defendant highlighted the redacted portions to enable the Court to review whether the redacted information was properly withheld under the asserted privileges.

## *II.     Legal Standard*

"A district court is afforded wide discretion in its handling of discovery matters." Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988). See also Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003) ("We will not reverse a district court's discovery ruling absent a gross abuse of discretion resulting in fundamental unfairness in the trial of a case.") (internal quotation omitted).

## *III.    Discussion*

Plaintiff argues that the contents of the claim file that were created before he filed this lawsuit are not subject to either the attorney-client or work-product privilege. (ECF No. 22 at 4). Plaintiff urges the Court to order production of the entire claim file, including the reserve information, or, in the alternative, review the unredacted file *in camera* to determine which documents, if any, are privileged. Defendant counters that the redacted portions of the claim file "were properly withheld from production for attorney-client privilege and under the work product doctrine." (ECF No. 25 at 1).

The scope of discovery under Fed. R. Civ. P. 26(b) is extremely broad. Mills v. Liberty Mut. Ins. Co., No. 4:16-CV-00571 JAR, 2017 WL 1497904, at * 2 (E.D.Mo. April 24, 2017) (quoting Gowan v. Mid Centry Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015)). See also 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 3637 (1970). Federal Rule

of Civil Procedure 26(b)(1) provides that civil litigants may obtain:

> Discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable. Id.

A. *Attorney-client privilege*[4]

Plaintiff claims that Defendant improperly withheld material involving its outside counsel, Mr. Hunt, who was adjusting the claim and not providing legal advice. (ECF No. 21). In response, Defendant asserts that it retained Mr. Hunt "to review legal issues pertaining to coverage under Plaintiff's automobile insurance policy" and that Mr. Hunt "neither performed any underlying factual investigation nor made an ultimate coverage decision." (ECF No. 25 at 2). Defendant claims that all sixty-three documents that it either withheld or redacted are protected by the attorney-client privilege.

The purpose of the attorney-client privilege is to promote and encourage open and frank consultation between a client and his or her attorney. Holland v. Schwan's Home Serv., Inc., 992 N.E.2d 43, 84 (Ill.App. 2013). "The party claiming the attorney-client privilege bears the burden of presenting factual evidence that establishes the privilege." Id. (quoting Pietro v. Marriott Senior Living Servs., Inc., 348 Ill.App.3d 541, 551 (Ill.App. 2004)). "Because it is the privilege, not the duty to disclose, that is the exception, the privilege ought to be strictly confined within its *narrowest possible limits.*" Id. (emphasis in original) (quoting Buckman v. Columbus-

---

[4] State law applies to claims of attorney-client privilege in diversity cases. Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000). The parties do not dispute that Illinois law applies in this case.

Cabrini Med. Ctr., 272 Ill.App.3d 1060, 1066 (Ill.App. 1995)).

"In Illinois, as elsewhere, the general rule is that communications between an insurer and its outside coverage counsel are privileged." Slaven v. Great Am. Ins. Co., 83 F.Supp.3d 789, 794 (N.D.Ill. 2015). "But, also in Illinois, as in many other states, 'to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney/client privilege does not apply.'" Id. (quoting Lagestee-Mulder, Inc. v. Consol. Ins. Co., No. 09 C 7793, 2010 WL 4781461, at *2 (N.D.Ill. 2010)). "The public policy issue behind this result is that insurance companies, which are in the business of reviewing processing and adjusting claims, should not be permitted to insulate the factual findings of its claim investigation by the involvement of an attorney to perform such work." Chicago Meat Processors, Inc. v. Mid-Century Ins. Co., 1996 WL 172148, at *3 (N.D.Ill. 1996). "Therefore, the factual results of such an investigation are discoverable in cases challenging the denial of the claim, to the same extent as if such factual investigation were conducted by its own adjusters or claims department." Id.

To the extent that Defendant contends that certain withheld or redacted documents are protected by the attorney-client privilege, the Court has reviewed the documents *in camera* and finds that many of the redactions contain communications relating to ordinary business activities (e.g., internal communications about retaining counsel) and not made for the purpose of soliciting legal advice. Accordingly, the following redactions from the challenged documents do not fall within the parameters of the attorney-client privilege and are not protected:

   a. Nos. 3-9: entirety of redactions

   b. Nos. 15-18: entirety of redactions

   c. No. 19: top of page to ending with sentence, "Once we hear back . . ."

6

    d. No. 28: bottom of redacted portion beginning, "UIM claim presented-"

    e. No. 31: entirety of redaction

    f. Nos. 73-75: entirety of redactions

    g. No. 77: entirety of redaction

The remaining redacted portions to which Defendant avers the privilege applies are protected because they contain or memorialize communications between Defendant's representatives and legal counsel for the purpose of obtaining legal services and advice.

### B. *Work-product doctrine*[5]

Plaintiff states that, "[a]n insurer's decision to decline coverage is usually the point at which the ordinary course of business ends and the anticipation of litigation begins." (ECF No. 26 at 1) (quoting Elec. Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co., No. 4:15-CV-1171 CDP, 2016 WL 3997069, at 3 (E.D.Mo. 2016)). Because Defendant has not denied coverage, Plaintiff argues that the "date the lawsuit was filed should be treated as the date the ordinary course of business concluded" and the work-product doctrine began to apply. (ECF No. 22 at 4). Defendant counters that all documents prepared after Plaintiff retained counsel on June 28, 2017 are attorney work product. (ECF No. 25).

Under Federal Rule of Civil Procedure 26, a party may not ordinarily discover documents prepared in anticipation of litigation by an opposing party unless the party seeking discovery has a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3); Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). Whether documents were prepared in anticipation of litigation is a factual determination:

---

[5] Federal law governs the application of the work-product doctrine. Baker, 209 F.3d at 1054.

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Elec. Power Sys., 2016 WL 3997069, at *3 (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977)) (internal quotation marks and citation omitted). In other words, "[t]o "be protected, the documents must have been prepared after a 'specific threat' of litigation became 'palpable.' That litigation was 'merely a possibility' is insufficient." Am. Modern Home Ins. Co v. Thomas, No. 4:16-CV-215 CDP, 2017 WL 3978369, at *4 (E.D.Mo. Sept. 11, 2017) (quoting Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., No. 4:05-CV-1934 DDN, 2012 WL 1389708, at *4 (E.D.Mo. April 23, 2012)).

In the insurance context, the Eastern District has recognized that "much of the paperwork generated by insurance companies 'is prepared with an eye toward a possible legal dispute over a claim[.]'" Elec. Power Sys., 2016 WL 3997069, at *3 (quoting Logan Commercial Union Ins. Co., 96 F.3d 971, 977 (7th Cir. 1996). "Because of this, 'it is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared *because* some articulable claim, likely to lead to litigation, . . . ha[s] arisen." Id. (emphasis in original) (quoting Logan Commercial, 96 F.3d at 977) (internal quotations and citation omitted). "An insurer's decision to decline coverage is usually the point at which the ordinary course of business ends and the anticipation of litigation begins." Id. See also Am. Modern Home, 2017 WL 3978369, at *4.

Importantly, in the instant case, Defendant has not denied Plaintiff's claim. In the absence of a claim denial, the Court finds that litigation became palpable on April 19, 2017. Plaintiff's counsel sent Mr. Hunt a settlement demand letter on January 5, 2017 and, after

8

receiving no response, sent a follow-up letter on February 7, 2017. (ECF Nos. 26-5 & 26-6). Plaintiff's counsel sent Mr. Hunt a third demand letter on April 19, 2017, which concluded: "As we have neither received an acknowledgement of my letter of January 5, 2017, nor a response to the initial letter, we do not anticipate we will get either from you now. Therefore, *we anticipate filing suit in the near future*." (ECF No. 26-10) (emphasis added).

Prior to receiving this specific threat of litigation, Defendant engaged in the ordinary course of business of investigating and adjusting Plaintiff's insurance claim. While Defendant engaged legal counsel to assist in adjusting the claim, the record shows that the question of whether Defendant would either settle or deny Plaintiff's claim remained open until no earlier than April 19, 2017. The Court therefore finds that documents prepared prior to April 19, 2017 were not prepared "because of some articulable claim" and are not work product. Accordingly, to the extent the attorney-client does not apply to redacted information contained in documents created prior to April 19, 2017, the information must be produced to Plaintiff.

With respect to the redacted information dated after April 19, 2017 that is not subject to attorney-client privilege, only Items Nos. 15-18 are entitled to work-product protection. The remaining documents were prepared in the ordinary course of business. See Am. Modern Home, 2017 WL 3978369, at *5. Therefore, the redacted information contained in Items Nos. 19, 28, 31, and 69-70 are not protected by the work-product privilege and must be produced to Plaintiff.

As previously discussed, documents subject to protection under the work-product doctrine are discoverable upon a showing of substantial need. Fed. R. Civ. P. 26(b)(3). See also See e.g., Olga Despotis Trust v. Cincannati Ins. Co., No. 4:12-CV-2396 AGF, 2014 WL 3477310, at *3 (E.D.Mo. July 15, 2014). "There often is a substantial need for discovery of information in a claims file as it relates to a claim of vexatious refusal to pay." Elec. Power Sys.,

2016 WL 3997069, at *4 (citing Lloyd's Acceptance, 2012 WL 1389708, at *6). However, "[t]he mere pleading of vexatious refusal to pay . . . does not itself create a substantial need for an insurer's internal documents." Id. While the required showing is "not a high hurdle," the plaintiff "must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith." Id. (quoting Lloyd's Acceptance, 2012 WL 1389708, at *6).

Plaintiff failed to demonstrate some likelihood or probability that the redacted information is protected by the work-product doctrine. In his reply brief, Plaintiff merely invokes the language of Rule 26 and alleges a substantial need based on the general relevance of an insurance claim file to claims of bad faith. "Allegations of bad faith alone, however, are insufficient to invoke the exception to work product protection." Elec. Power Sys., 2016 WL 3997069, at *5. Moreover, Plaintiff does not demonstrate that it cannot obtain the desired information by other means, such as deposition. See id.; Am. Modern Home, 2017 WL 3978369, at *5. The Court therefore finds that Items Nos. 15-18 are protected attorney work product.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel (ECF No. 21) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant shall produce to Plaintiff sales and promotional materials from the years 2016 and 2017 that are specific to the Illinois insurance market and similar in nature to the materials contained in Plaintiff's Exhibit N (ECF No. 26-11).

**IT IS FINALLY ORDERED** that, no later than **December 19, 2017**, Defendant shall produce to Plaintiff the following portions of previously withheld documents:

   a. Nos. 3-9: entirety of redactions

b. No. 19: top of page to ending with sentence, "Once we hear back . . ."

c. No. 28: bottom of redacted portion beginning, "UIM claim presented-"

d. No. 31: entirety of redaction

e. Nos. 73-75: entirety of redactions

f. No. 77: entirety of redaction

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of December, 2017